CRANSTON and others *against* The Philadelphia Insurance Company.

1813.

*Philadelphia,*
*Monday,*
July 12.

An agent who effects insurance for his principal, and becomes answerable for the premium, has a lien upon the policy, so long as he retains it; but if he delivers it up, his lien is gone; and although the underwriters are intitled to deduct the premium, if unpaid, from the loss, yet if paid by the agent, he has no equity to stand in their place, and to claim payment out of the sum due for the loss.

THIS was a *scire facias* against the defendants, as garnishees of *Nicholas Duff,* in which a case was stated for the opinion of the Court, in substance as follows:

On the 20th of *September* 1802, *Nicholas Duff* as principal, and *George Barnwell,* as surety, entered into a bond at the custom house of *New York,* for duties, amounting to 596 dollars 73 cents, payable in six months, which *Barnwell* paid on the 10th of *May* 1803, with interest, making 601 dollars 68 cents.

*Duff,* being owner of the brig *Betsy,* chartered her for a voyage from *New York* to cape *François.* The vessel sailed on the 25th of *September* 1803, to bring home a cargo, but returned to *New York* on the 5th of *December* 1803, without earning freight. In the month of *September* 1803, *Duff* agreed to effect insurance on the *Betsey* and her freight upon the above voyage, and to assign the policies to *Barnwell* as a security for the payment of the above debt.

After this agreement, *Duff* directed the plaintiffs to effect insurance on the *Betsy* and her freight in *Philadelphia.* The insurance was accordingly effected in the names of the plaintiffs on the 21st of *October* 1803, and the plaintiffs gave their note for the premium of both policies, amounting to 372 dollars, payable at four months, which note they paid to the defendants on the 25th of *February* 1804. One of the plaintiffs in *November* 1803 forwarded the policies to another in in *New York,* who delivered them to *Duff* about the 7th of *December* 1803. On the 12th of *December* 1803, *Barnwell* sent the policy on freight indorsed in blank by *Duff,* to *W. M'Clure* and *Co.,* with other documents, and directed those gentlemen to demand payment as for a total loss, which was accordingly done on the 13th of *December* 1803.

*Duff* became insolvent, applied for the benefit of the insolvent laws, and made a general assignment of his property about the 6th of *January* 1804.

The plaintiffs issued a foreign attachment against *Duff,* for the said debt, on the 9th of *January* 1804, which was served the same day on the defendants; and on executing a

writ of inquiry, the verdict found due to them 447 dollars      1813.
12 cents, on the 25th of *July* 1807.

The questions submitted, were, 1. Whether there was      CRANSTON
legal evidence of the debts due from *Duff* to *Barnwell*, and   PHILADEL-
*Jones* and *Clinch*, or either of them, and of a *bona fide* as-   PHIA
signment of the policy? (This was wholly a question of fact,   INS. COMPANY
depending on documents exhibited, which embraced the
case of *Jones* and *Clinch* as well as *Barnwell*, but which are
of no importance.) 2. Whether the plaintiffs were intitled in
law or equity to be repaid the premium out of the fund in
the hands of the defendants?

If the plaintiffs were entitled to recover, the Court were
to fix the amount; if not, then judgment to be for the de-
fendants.

*Dallas* for the plaintiffs, argued in support of their claim
on the following grounds. 1. Because the plaintiffs had an
equitable lien on the fund in the defendants' hands, which
*Duff's* assignment to *Barnwell* could not discharge; their
money having produced the fund, and *Barnwell* having no
equity to take the fruit, without paying the cost of it. 2.
Because the policy provided, that in case of loss, the pre-
mium should be deducted, if not previously paid; and the
plaintiffs being the sureties of *Duff*, and having paid the
note to the defendants, were intitled in equity to the security
which the defendants had under the agreement in the policy,
according to *Miller* v. *Ord* (a). The defendants being in-
titled to deduct both premiums from the loss on the freight
policy, the plaintiffs·had an equity to the same extent. 3.
Because it appeared from the dates that there was an agree-
ment in *September* 1803, between *Duff* and *Barnwell*, that
*Duff* should effect insurance, and assign the policy; and the
order being given after, and in pursuance of, that agreement,
the plaintiffs must be considered as agents of *Barnwell*,
though *Duff's* name was used, *Barnwell* being the party in
interest; and therefore they had the same equity against
*Barnwell* as they could have had against *Duff*.

*Rawle* for the defendants, denied the right of the plain-
tiffs: 1. Because this being a foreign attachment, they could

(a) 2 *Binn.* 382.

recover no more than was *Duff*'s on the 9th of *January* 1804, prior to which time he had not only assigned to *Barnwell*, but to general assignees; and further at the date of the attachment, nothing was due to them, as they had not then paid the note. 2. Because they had neither lien nor equity. As to lien, they surrendered it, by giving up the policy, and trusting *Duff* personally. As to equity, they could have none against *Barnwell*, who was a *bona fide* assignee without notice, and never in any way pledged himself for the premium, or induced the plaintiffs to trust *Duff*. Nor could they claim to take the place of the defendants as to the premium, because the premium being paid, the defendants were not intitled to deduct any thing. The plaintiffs by their foreign attachment came in as representing *Duff*, and not under any right which they had individually in the money due by the defendants.

TILGHMAN C. J. Two questions are submitted to the Court on the case stated. 1st, Whether there is legal evidence of debts due from *Duff* to *Barnwell*, and *Jones* and *Clinch*, or either of them, and a *bona fide* assignment of the policy. 2d, Whether the plaintiffs are intitled in law or equity, to be repaid the premiums out of the funds in the hands of the defendants?

1. Upon an examination of the depositions and documents exhibited in the cause, I am of opinion that there is legal evidence of debts due from *Duff* to *Barnwell*, and to *Jones* and *Clinch*, and also of a *bona fide* assignment of the policy.

2. It appears that the plaintiffs procured insurances to be effected on the brig *Betsey* and her freight, as the agents of *Duff*, and knew nothing of *Barnwell* in the business. They passed their own note for the premiums of insurance, for which they undoubtedly had a lien on the policies as long as they retained them. But having given them up, they gave up their lien; because, although the insurances were made in their names, yet being for the benefit of *Duff*, it was competent to *Duff* to support actions against the insurers in his own name. Thus stands the case at law, and it is the same in equity, because there can be no equity against the assignees of the policies, who are purchasers for a valuable consideration without notice of any interfering claim. But it is said,

**1813.**

that the defendants have a right to deduct the amount of the premiums before they pay the loss, by the express terms of the policies, and that the plaintiffs who have paid the premium have a right to put themselves in the place of the defendants, and deduct their amount against the assignees of the policy. The plaintiffs are in a hard situation, but I am afraid it is too late to resort to a remedy of this kind; because the premiums being paid, there is nothing to deduct, and th giving up of the policies, the payment of the note for the premiums, and the prosecuting of an attachment, being all the acts of the plaintiffs, they must abide by the consequences. After all, their case is not uncommon; they trusted to their friend *Duff*, and gave up the staff which they held in their own hands. I can see no principle of law or equity by which the fund in the hands of the defendants can be made liable to the plaintiffs' demand, and am therefore of opinion that judgment should be entered for the defendants.

CRANSTON
*v.*
PHILADEL-
PHIA.
INS. COMPANY

YEATES J. and BRACKENRIDGE J. concurred.

Judgment for defendants.